UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | Civil Action No. 1:19-cv-7796 (JHL) |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| MARIA VICTORIA RENDON, a/k/a ) | |
| Genoveva Restiepo-Rendon, a/k/a ) | |
| Maria Genoveva Rendon-Restrepo, a/k/a ) | |
| Maria-Genoveva Rendon, a/k/a ) | |
| Genoveva Rendon-Restiepo, a/k/a ) | |
| Genoveva Rendon, a/k/a ) | |
| Maria Rendon, ) | |
| ) | |
| Defendant. ) | |

**PLAINTIFF'S NOTICE OF MOTION**

To: MATTHEW KRIEZELMAN, Esq.
Kriezelman Burton & Associates, LLC.
200 W Adams Street, Suite 2211
Chicago, IL 60606

PLEASE TAKE NOTICE that, on Wednesday, December 18, 2018, at 9:30 a.m., or as soon thereafter as counsel may be heard, Plaintiff, by and through its attorney, JOHN J. W. INKELES, shall appear before Judge Joan H. Lefkow in the courtroom usually occupied by her in the Everett McKinley Dirksen U.S. Courthouse, 219 South Dearborn Street, Chicago, Illinois, or before such other judge who may be sitting in her place and stead, and then and there present the parties' **JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT** in the above-captioned case, at which time and place you may appear if you see fit.

Dated:  December 9, 2019                     Respectfully submitted,

JOHN R. LAUSCH, Jr.
United States Attorney

CRAIG A. OSWALD
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9080
Email:  craig.oswald@usdoj.gov


JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

TIMOTHY M. BELSAN
Chief
National Security & Affirmative Litigation Unit


 /s/ John J. W. Inkeles
JOHN J. W. INKELES
Counsel for National Security
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 532-4309
Facsimile: (202) 305-1890
E-mail: john.inkeles@usdoj.gov

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) Civil Action No. 1:19-cv-7797 (JHL) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| MARIA VICTORIA RENDON, a/k/a | ) |
| Genoveva Restiepo-Rendon, a/k/a | ) |
| Maria Genoveva Rendon-Restrepo, a/k/a | ) |
| Maria-Genoveva Rendon, a/k/a | ) |
| Genoveva Rendon-Restiepo, a/k/a | ) |
| Genoveva Rendon, a/k/a | ) |
| Maria Rendon, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**JOINT MOTION FOR ENTRY OF CONSENT JUDGMENT**

Plaintiff the United States of America ("United States") and Defendant Maria Victoria Rendon, a/k/a Genoveva Restiepo-Rendon, a/k/a Maria Genoveva Rendon-Restrepo, a/k/a Maria Genoveva Rendon, a/k/a Genoveva Rendon-Restiepo, a/k/a Genoveva Rendon, a/k/a Maria Rendon ("Defendant"), jointly move this Court to enter the attached proposed Consent Judgment Revoking Naturalization. This motion is supported by Defendant's admission to, and acknowledgment of the truth of, the specific facts identified below.

**FACTUAL BACKGROUND**

Defendant, a native of Colombia, entered the United States illegally on or about August 3, 1979, near Miami, Florida. On February 10, 1981, a grand jury returned an indictment, charging Defendant, using the identity Genoveva Rendon, with committing the following offenses: (i) for conduct she committed from on or about September 1, 1980, through and including December 9, 1980, conspiracy to distribute and possess cocaine, in violation of 21

1

U.S.C. § 846; and (ii) for conduct she committed on December 9, 1980, distribution and possession of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A). On March 13, 1981, a jury convicted Defendant of the foregoing offenses. *See United States v. Norman Restrepo, et al.*, Dkt. No. S 80 Cr. 811 (S.D.N.Y. Mar. 13, 1981). The Court scheduled sentencing for April 24, 1981; however, because Defendant failed to appear for sentencing, the Court issued a bench warrant.

On February 10, 1981, Defendant, using the identity Maria Genoveva Rendon-Restrepo, was interviewed by the Immigration and Naturalization Service ("INS") under oath in the presence of her attorney of record.[1] Defendant stated that: (i) her true and correct name was Maria Genoveva Rendon-Restrepo; (ii) she had entered the United States without inspection on August 3, 1979, in Miami, Florida; and (iii) she wished to return to Colombia. On April 16, 1981, the INS issued Defendant an Order to Show Cause and Notice of Hearing charging her with inadmissibility under 8 U.S.C. § 1231(a)(2) for having entered the United States without inspection. On April 20, 1981, the Order and Notice were sent via first-class mail to Defendant. The Order and Notice were returned to the INS, Defendant's address having been crossed out and containing the notation: "moved-left no address." On May 5, 1981, Defendant failed to appear at her removal hearing. Subsequent efforts by the INS to locate Defendant proved unsuccessful. On March 8, 1983, the immigration court removed Defendant's case from its docket.

---

[1] As of March 1, 2003, the legacy Immigration and Naturalization Service ("INS") ceased to exist, and Congress transferred its functions to various agencies within the Department of Homeland Security. *See* Homeland Security Act of 2002, §§ 441, 451, 471, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002) (codified at 6 U.S.C. §§ 251, 271, 291). However, because many of the events in this case took place prior to the transfer, "INS" will be referenced where factually appropriate.

On or about April 30, 1988, Defendant, under the identity Maria Victoria Rendon, applied for Temporary Resident Status ("TRS") pursuant to 8 U.S.C. § 1255a(a). The INS approved Defendant's application, and she was granted TRS. On or about June 7, 1990, Defendant applied for adjustment of status to permanent resident pursuant to 8 U.S.C. § 1255 with the INS. On or about July 25, 1990, the INS approved Defendant's application, and Defendant was accorded permanent resident status.

On or about February 3, 1996, Defendant, using the Maria Victoria Rendon identity, filed a Form N-400, Application for Naturalization ("N-400"), with the INS, based on having been a permanent resident for a period of five years. In Defendant's N-400, she represented *inter alia*:

a. she had never "been an illicit trafficker in narcotic drugs or marijuana";

b. she had never "knowingly committed any crime for which [she had] not been arrested"; and

c. she has never "been arrested, cited, charged, indicted, convicted, fined or imprisoned for breaking or violating any law or ordinance excluding traffic regulations."

On or about December 2, 1995, Defendant signed the N-400 under penalty of perjury, thereby swearing or affirming that the N-400 and the evidence submitted with it was true and correct. On August 16, 1996, Defendant was interviewed, under oath, in Chicago concerning the information she had provided in her N-400 to determine her eligibility for naturalization. At the end of her interview, Defendant signed her N-400 in the presence of the interviewing officer and swore that the contents of her application, including corrections made at her request, and her application were true to the best of her knowledge and belief. Based on her written application and naturalization interview, the INS approved Defendant's naturalization application on

September 16, 1996. Defendant took the oath of allegiance on September 24, 1996, and on that date she was admitted as a citizen of the United States. The INS issued Defendant Certificate of Naturalization number 21343798.

On April 12, 2000, Defendant was charged in the United States District Court for the Southern District of New York with having committed bail jumping for her failure to appear for sentencing from April 1981 through January 2000, in violation of 18 U.S.C. §§ 3146(a)(1) and (b)(1)(A)(i). On that same date, April 12, 2000, Defendant pleaded guilty to, and was convicted by the court of, knowingly committing the crime of felony bail jumping. On July 17, 2000, Defendant was sentenced to 21 months' imprisonment for the bail jumping conviction. *See United States v. Maria Rendon*, Dkt. No. 00-CR-382 (S.D.N.Y. July 17, 2000).

## STATUTORY BACKGROUND

The Immigration and Nationality Act provides for the revocation of an individual's naturalized U.S. citizenship for either of two independent grounds: (1) if the naturalization was illegally procured; or (2) if the naturalization was procured by concealment of a material fact or by willful misrepresentation. 8 U.S.C. § 1451(a). "Illegal procurement" has occurred where an applicant naturalized despite failing to comply with all congressionally-imposed prerequisites to the acquisition of citizenship. *Fedorenko v. United States*, 449 U.S. 490, 517 (1981). Naturalization was procured by concealment of a material fact or by willful misrepresentation where: (1) the naturalized citizen misrepresented or concealed some fact during the naturalization process; (2) the misrepresentation or concealment was willful; (3) the fact was material; and (4) the naturalized citizen procured citizenship as a result of the misrepresentation or concealment. *Kungys v. United States*, 485 U.S. 759, 767 (1988). Where the government establishes that the defendant's citizenship was procured illegally or by willful misrepresentation

of material facts, "district courts lack equitable discretion to refrain from entering a judgment of denaturalization." *Fedorenko*, 449 U.S. at 517.

Based on the agreed facts and law, Defendant's naturalized citizenship was illegally procured.

## **ANALYSIS**

The parties agree that Defendant illegally procured her citizenship because she was not eligible for naturalization, as alleged in Counts One, Two, and Three of the Complaint. ECF No. 1 ¶¶ 55-88; *see* 8 U.S.C. § 1427(a)(3).

First, as alleged in Count One in the Complaint, Defendant concedes that she was not lawfully admitted for permanent residence. Congress has mandated that to qualify for naturalization, an applicant must have been *lawfully* admitted to the United States for permanent residence. *See* 8 U.S.C. §§ 1427(a)(1), 1429. Furthermore, to qualify for permanent residency based on one's TRS, an applicant must first have *lawfully* been admitted for TRS. 8 U.S.C. § 1255a. The term "lawfully" requires compliance with the substantive legal requirements for admission, and not mere procedural regularity. *Estrada-Ramos v. Holder*, 611 F.3d 318, 321 (7th Cir. 2010). Defendant was ineligible for TRS because she was inadmissible to the United States and had been convicted of a felony. 8 U.S.C. § 1255a(a)(4)(A)-(B). Specifically, Defendant concedes she was inadmissible at the time she applied for TRS, and thus ineligible for TRS, because: (i) she had been found guilty of two offenses relating to the possession with intent to distribute and/or distribution of a controlled substance narcotic drugs; (ii) her drug trafficking crimes are also crimes of moral turpitude, which rendered her excludable under then-8 U.S.C. § 1182(a)(9) (1988); and (iii) she was committing the continuous act of "bail jumping" – a felony. Consequently, Defendant's TRS status was not *lawfully* granted and did not render her

eligible to *lawfully* adjust her status. Defendant further concedes that she was ineligible to adjust *lawfully* to permanent resident status because: (i) she had been convicted of two felonies in the Southern District of New York in 1981; (ii) her drug trafficking crimes are also crimes of moral turpitude, rendering her excludable under then-8 U.S.C. § 1182(a)(9) (1988); and (iii) she had been found guilty of a violation of a law relating to narcotics, 8 U.S.C. §§ 1182(a)(23) (1988). Because Defendant was ineligible for adjustment to permanent residence, and was thus not *lawfully* admitted to permanent residence, she was ineligible to naturalize under 8 U.S.C. §§ 1427(a)(1) and 1429. Defendant thus concedes that her naturalization was illegally procured and that this Court should enter an order of denaturalization with respect to Count One.

Second, as alleged in Count Two in the Complaint, Defendant concedes that she lacked the requisite good moral character to naturalize. Congress has also mandated that an individual may not naturalize unless that person "during all periods referred to in [8 U.S.C. § 1427(a)] has been and still is a person of good moral character." 8 U.S.C. § 1427(a). For an applicant who is naturalizing based on her time as a permanent resident, the required statutory period for good moral character begins five years before the date the applicant files the application for naturalization, and continues until the applicant takes the oath of allegiance and becomes a United States citizen. 8 U.S.C. § 1427(a); 8 C.F.R. § 316.10(a)(1). Thus, Defendant was required to establish good moral character from February 3, 1991, through September 24, 1996 (the statutory period). Defendant concedes she lacked the requisite good moral character because she committed unlawful acts during the statutory period that reflected adversely on her moral character and there were no extenuating circumstances. 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10(b)(3)(iii). Specifically, during the statutory period, Defendant committed acts that constitute the essential elements of several federal crimes: (i) bail jumping, in violation of 18

6

U.S.C. §§ 3146(a)(1), (b)(1)(A)(i); (ii) false swearing and false identity usage in an immigration matter, in violation of 18 U.S.C. § 1546(a); and (iii) perjury, in violation of 18 U.S.C. § 1621(1). Because Defendant concedes that she committed unlawful acts during the statutory period that adversely reflected on her moral character, she was not a person of good moral character, and was ineligible to naturalize under 8 U.S.C. § 1427(a)(3). Because she was ineligible to naturalize, Defendant concedes that she illegally procured her citizenship, and that the Court must revoke her citizenship, as provided for by 8 U.S.C. § 1451(a).

Third, as alleged in Count Three in the Complaint, Defendant concedes that she lacked good moral character based on conduct prior to the statutory period. The Government may consider an applicant's conduct at any time prior to the statutory period if her conduct during the statutory period does not reflect a reform of character, or if the earlier conduct is relevant to a determination of her moral character at the time she seeks to naturalize. *See* 8 U.S.C. § 1427(e); 8 C.F.R. § 316.10(a)(2). Defendant's convictions for conspiracy to distribute and possess cocaine, in violation of 21 U.S.C. § 846, and distribution and possession of cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), (b)(1)(A), though pre-dating the statutory period, colored her moral character during the statutory period. Defendant concedes that her decision to willfully and knowingly fail to appear before the Court for sentencing from April 1981 through January 2000 reflects poorly on her good moral character because it further indicates her refusal to take responsibility or make amends for her crimes. Because Defendant lacked the requisite good moral character as required by law, she was ineligible for naturalization. 8 U.S.C. § 1427(a)(3). Defendant thus concedes that her naturalization was illegally procured and that this Court should enter an order of denaturalization.

## CONCLUSION

In light of the facts above which Defendant admits are true, and having fully discussed the case with her counsel, Defendant agrees with the United States that denaturalization is proper and, to avoid delay, uncertainty, inconvenience, and expense of further litigation, does not wish to further contest denaturalization. Accordingly, the United States and Defendant jointly move this Court for an order providing the relief requested in the attached proposed Consent Judgment Revoking Naturalization. The parties also jointly request the Court to set a hearing for approximately 21 days from the effective date of the Judgment at which Defendant, appearing in person with counsel, must demonstrate that she has complied with the Judgment, unless the United States provides notice that Defendant has fully complied and the Judgment is satisfied.

Respectfully submitted,

_____  Dated: 11-22-19
MARIA VICTORIA RENDON, a/k/a
Genoveva Restiepo-Rendon, a/k/a
Maria Genoveva Rendon-Restrepo, a/k/a
Maria-Genoveva Rendon, a/k/a
Genoveva Rendon-Restiepo, a/k/a
Genoveva Rendon, a/k/a
Maria Rendon

_____  Dated: 11/25/19
MATTHEW S. KRIEZELMAN, Esq.
Kriezelman Burton & Associates, LLC.
200 W Adams Street, Suite 2211
Chicago, IL 60606
Phone: (312) 332-2550
Fax: (312) 782-0158
E-mail: mkriezel@krilaw.com

*Counsel for Defendant*

JOHN R. LAUSCH, Jr.
United States Attorney

CRAIG A. OSWALD
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 886-9080
Email: craig.oswald@usdoj.gov


JOSEPH H. HUNT
Assistant Attorney General
Civil Division

WILLIAM C. PEACHEY
Director
Office of Immigration Litigation
District Court Section

TIMOTHY M. BELSAN
Chief
National Security & Affirmative Litigation Unit

/s/ John J. W. Inkeles                          Dated: 12-6-09

JOHN J. W. INKELES
Counsel for National Security
U.S. Department of Justice, Civil Division
Office of Immigration Litigation
District Court Section
P.O. Box 868, Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 532-4309
Facsimile: (202) 305-1890
E-mail: john.inkeles@usdoj.gov